**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **NANNETTE PIERSON,** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No. 16-8499 (ES) (JAD)** |
| | : | |
| **v.** | : | **MEMORANDUM** |
| | : | |
| **UNITED STATES INTERNAL** | : | |
| **REVENUE SERVICE, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

SALAS, DISTRICT JUDGE

 Pending before the Court are: (i) the United States'[1] motion for summary judgment (D.E. No. 42); (ii) Plaintiff Nannette Pierson's ("Nannette") cross-motion for summary judgment (D.E. No. 46-6); (iii) Nannette's motion to withdraw funds on deposit with the Clerk of Court (D.E. No. 54); (iv) Defendant John James Pierson's ("John") cross-motion for default judgment (D.E. No. 57); and (v) Nannette's motion to vacate default and for leave to file an answer to John's counterclaims (D.E. No. 59).

 The United States removed this case from the Superior Court of New Jersey, Chancery Division, Morris County, under 28 U.S.C. §§ 1441, 1442, 1444 and 1446. (*See* D.E. No. 1). The Court has considered the parties' submissions for each motion and declines to hear oral argument under Federal Rule of Civil Procedure 78(b). For the following reasons, the Court GRANTS the United States' motion for summary judgment; DENIES Nannette's cross-motion for summary

---

[1]  Although Plaintiff named the IRS and not the United States as a defendant, the United States alone is the proper defendant in a suit to quiet title to real property on which the United States has a lien. 28 U.S.C. §§ 1444, 2410(a)(1); *Moco Invs., Inc. v. United States*, 362 F. App'x 305, 307 n.2 (3d Cir. 2010).

judgment; DENIES Nannette's motion to withdraw funds; DENIES John's cross-motion for default judgment; and GRANTS Nannette's motion to vacate and for leave to file an answer to John's counterclaims.

## I. Background

This case involves competing lien priorities connected to the sale of John and Nannette's marital home. The facts are as follows.[2]

***The Real Property & Divorce Proceedings***.  In 1986, John and Nannette jointly purchased real property at 66 Fox Hunt Road, New Vernon, New Jersey, 07976 (the "Real Property").  (U.S. SUF ¶ 7).  They later divorced in 2007.  (*Id.* ¶ 16; Nannette SUF ¶ 1).  A Final Judgment of Divorce, which incorporated by reference a Supplemental Judgment of Divorce as to Settled Issues, was entered on July 26, 2007.  (U.S. SUF ¶ 17).  Following a short trial, a Supplemental Judgment of Divorce as to Contested Issues (together with the Final Judgment of Divorce and the Supplemental Judgment of Divorce as to Settled Issues, the "2007 Judgment of Divorce")[3] was entered on July 30, 2007.  (*Id.*).  As a result of the divorce, John and Nannette became joint owners of the Real Property as tenants in common.  (U.S. SUF ¶ 20; Nannette SUF ¶ 2).

---

[2]     The Court provides this background section primarily for purposes of resolving the United States' and Nannette's motions for summary judgment.  Unless otherwise noted, the Court draws the facts from the United States' and Nannette's statements of undisputed facts ("SUF").  (D.E. No. 42-2 ("U.S. SUF"); D.E. No. 46 ("Nannette SUF"); D.E. No. 51-1 ("U.S. Reply SUF")).  John "incorporate[d] by reference" the United States' SUF and indicated that he "does not dispute them for purposes of [the United States'] motion."  (D.E. No. 48 at 2).

Although Nannette filed her own SUF, she did not file a responsive statement "addressing each paragraph of the movant's statement, indicating agreement or disagreement," as required under the local rules.  *See* L. Civ. R. 56.1(a).  And as the United States points out, Nannette did not attempt to address the United States' SUF in her opposition brief or cross-motion.  (*See* D.E. No. 51 at 1 n.1).  Thus, to the extent Nannette has failed to dispute any properly supported facts in the United States' SUF, the Court will deem those facts undisputed for purposes of these summary-judgment motions.  *See Tenn. Gas Pipeline Co., L.L.C. v. 1,693 Acres of Land in the Twp. of Mahwah*, No. 12-7921, 2015 WL 2079661, at *7 n.6 (D.N.J. May 4, 2015).  In any event, Nannette states in her cross-motion that "[t]here are no factual disputes as to the events preceding the institution of the lawsuit."  (D.E. No. 46-6).

[3]     (*See* D.E. Nos. 42-11 & 42-12).

The 2007 Judgment of Divorce imposed certain obligations on John and Nannette. In particular, the Supplemental Judgment of Divorce as to Settled Issues required John to make all the mortgage payments on the Real Property until it was sold. (U.S. SUF ¶ 22; Nannette SUF ¶ 3; U.S. Reply SUF ¶ 3). John and Nannette were also required jointly to pay unpaid federal income tax liabilities for the 2005 tax period (including interest and penalties) off the top of the net sale proceeds of the Real Property. (U.S. SUF ¶ 23). In addition, the Supplemental Judgment of Divorce as to Contested Matters ordered that John and Nannette would be jointly responsible for any interest or penalties if any are imposed by a taxing authority for any part of their total unpaid tax liability for 2005. (*Id.* ¶ 24).

On May 19, 2016, a quit claim was recorded with the Morris County Clerk transferring John's interest in the Real Property to Nannette for $1. (*Id.* ¶ 9). The Real Property was then sold pursuant to the Court's December 19, 2016 Order for $1.05 million. (*Id.* ¶ 12) (citing D.E. No. 13). The mortgage holder was paid $484,169 from those proceeds, of which $31,400 was later refunded and deposited with the Court. (*Id.* ¶ 13). Accordingly, $480,884 in sale proceeds remain after payment of the mortgage and closing costs. (*Id.* ¶ 14). Those sale proceeds have been deposited with the Court. (*Id.*) (citing D.E. Nos. 31 & 33).

***John's Tax Liabilities***. The IRS assessed unpaid federal income taxes against John for the tax years 2005, 2008, and 2009. (*Id.* ¶ 1). Federal tax liens arose and attached to John's half-interest in the Real Property as of March 22, 2010, April 19, 2010, and November 7, 2011, i.e., the dates of the respective assessments for the 2005, 2008, and 2009 tax periods. (*Id.* ¶ 8). By virtue of this tax liability, John owed the United States $249,515 as of November 6, 2017, plus interest and statutory additions accruing after that date. (*Id.* ¶ 2).

On September 2, 2011, the IRS recorded Notice of Federal Tax Lien ("NFTL") No. 809021411 with the Morris County Clerk's Office against John in the amount of $381,115 for his 2005 and 2008 unpaid federal income taxes. (*Id.* ¶ 4). On February 7, 2012, the IRS recorded NFTL No. 846396312 with the Morris County Clerk's Office against John in the amount of $9,915 for his 2009 unpaid federal income taxes. (*Id.* ¶ 5). In a Stipulation and Order entered in this Court on April 24, 2017, John stipulated, among other things, that these assessments and federal tax liens are valid. (*Id.* ¶ 6) (citing D.E. No. 34 ("Stipulation & Order")).

***Other Judgments & Liens***. On February 17, 2011, the law firm of Laufer Dalena Cadicina Jensen & Boyd ("Laufer") obtained a judgment (the "Laufer Judgment") against John for $59,575.27 plus interest of $24,771.68. (*Id.* ¶ 27). The Laufer Judgment was signed on October 12, 2010 and recorded as a lien on February 17, 2011. (*Id.*). The Laufer Judgment provides that in the event the Real Property is sold, the remaining judgment balance will be paid from the sale proceeds. (*Id.*).

On January 29, 2016, Nannette obtained a judgment against John for back rent in the amount of $252,300. (*Id.* ¶ 29). That judgment was recorded on February 4, 2016, then voluntarily released to convey clear title. (*Id.*). On August 25, 2015, Nannette's attorney, Lawrence A. Levin, recorded a lis pendens against the Real Property. (*Id.* ¶ 30). The lins pendens was also voluntarily released to convey clear title. (*Id.*).

***Procedural History***. Nannette filed a quiet-title action against John, the IRS, and Laufer on October 11, 2016, in the Superior Court of New Jersey, Chancery Division, Morris County. (D.E. No. 1-2 ("Compl.")). She brought the action to facilitate the sale of the Real Property, which was stalled when the buyers had discovered the Laufer Judgment and the federal tax liens recorded against the Real Property. (*See generally id.*; *see id.* ¶¶ 4-6).

The United States removed the action to this Court on November 14, 2016. (D.E. No. 1). Laufer and the United States each answered the Complaint and filed counterclaims and cross-claims, respectively, seeking to enforce their respective judgment and federal tax liens against John's half-interest in the sales proceeds. (*See* D.E. Nos. 5 & 14). John answered the Complaint and filed counterclaims against Nannette, seeking (i) contribution from Nannette "for her share of the payment of judgment/lien/money owed to the Internal Revenue Service relative to the parties' joint responsibility for income taxes, penalties, and interest pursuant to the Appellate Court decision and the Trial Court Order entered in this matter"; (ii) $100,000 paid by Nannette from the proceeds from the sale of the Real Property "as reimbursement for equitable distribution payments; and (iii) "payment from [Nannette] from the proceeds for maintenance, improvements, repairs and other carrying costs associated with the [Real Property] in excess of $300,000." (D.E. No. 8).

Nannette did not answer John's counterclaims. On February 20, 2018, John requested that the Clerk of Court enter Nannette's default (D.E. No. 56) and cross-moved for default judgment against Nannette (D.E. No. 57). The Clerk of Court entered Nannette's default on February 21, 2018. Nannette now moves to vacate the Clerk's entry of default and seeks leave to file an answer to John's counterclaims. (D.E. No. 59).

On October 20, 2017, the United States moved for summary judgment, seeking (i) to reduce to judgment unpaid federal income taxes, interest, and penalties assessed against John for the 2005, 2008, and 2009 tax periods; and (ii) to enforce its federal tax liens against John's half-interest in the sale proceeds from the sale of the Real Property according to lien priority. (*See* D.E. No. 42-1 at 1).

Nannette cross-moved for summary judgment. (D.E. No. 46-6). Nannette's cross-motion is a one-page document filed as an attachment to her opposition brief. (*Id*). As the United States

points out, the document is unsigned in violation of Local Civil Rule 11.1.  (*See* D.E. No. 51 at 9).

In any event, the entire cross-motion states:

> The legal position[s] set forth by the [United States] and [Nannette] are mirror images of each other.  There are no factual disputes as to the events preceding the institution of the lawsuit.
>
> In the event the Court denies summary judgment by the [United States], it should grant a cross-motion for summary judgment by [Nannette] which reduces [John's] one-half interest in the sale of the [Real Property] for the full amount of the outstanding mortgage at the time of the sale.  The balance of his one-half interest shall be given to the first lien holder to partially satisfy its outstanding judgment.

(D.E. No. 46-6).

## II.     Discussion

### A.     The United States' and Nannette's Motions for Summary Judgment

#### 1.     Legal Standard

Summary judgment is appropriate "where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Rochester Drug Coop. Inc. v. GoodHeart Pharmacy Inc.*, 716 F. App'x 105, 107 (3d Cir. 2017); *see also* Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party.  *Mylan Pharms. Inc. v. Warner Chilcott Pub. Ltd. Co.*, 838 F.3d 421, 433 n.42 (3d Cir. 2016).  The moving party bears the burden of establishing that no genuine issue of material fact remains.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party must present actual evidence that creates a genuine issue as to a material fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  "Additionally, when parties file cross-motions for summary judgment, the

governing standard does not change." *First Am. Title Ins. Co. v. Sadek*, No. 11-1302, 2017 WL 6663899, at *3 (D.N.J. Dec. 29, 2017) (citation and internal quotation marks omitted).

### 2. John's Tax Liability

As noted above, the IRS assessed unpaid federal income taxes against John for the years 2005, 2008, and 2009. As a result, federal tax liens arose on the dates of the assessments, i.e., on March 22, 2010, April 19, 2010, and November 7, 2011, respectively. By virtue of this tax liability, John owed the United States $249,515 as of November 6, 2017, plus interest and statutory additions accruing after that date.

John has stipulated both to the validity of the tax assessments and to the correctness of the tax liability. (Stipulation & Order; *see also* D.E. No. 48 at 2 (noting the Stipulation & Order and recommending that the Court grant summary judgment in favor of the United States on this issue). Accordingly, the Court grants summary judgment on the United States' Cross Claim I and will reduce to judgment John's unpaid federal income taxes, interest, and penalties assessed for the 2005, 2008, and 2009 tax periods.

### 3. The Federal Tax Liens

"The IRS is authorized to attach a lien on all 'property and rights to property' of any taxpayer who fails to pay federal taxes." *United States v. Bogart*, 715 F. App'x 161, 166 (3d Cir. 2017) (quoting 26 U.S.C. § 6321). Such a lien "shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed . . . is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322. As the Supreme Court has observed, the "transfer of property subsequent to the attachment of the lien does not affect the lien." *United States v. Bess*, 357 U.S. 51, 57 (1958).

Here, federal tax liens arose on March 22, 2010, April 19, 2010, and November 7, 2011, and attached to all property and rights to property then owned (or thereafter acquired) by John.

(*See* Stipulation & Order ¶ 5).  Thus, federal tax liens attached to the Real Property as of 2010, when the IRS assessed taxes for 2005 against John.  (*See id.* ¶ 9).  The IRS subsequently filed NFTLs on September 2, 2011 and February 7, 2012.  (*See id.* ¶¶ 6-7).

Because the tax liens attached to John's interest in the Real Property, the Court must determine the extent of John's interest in the Real Property.  To do so, the Court must look to state law.  *Drye v. United States*, 528 U.S. 49, 52 (1999).  There is no dispute that John had a one-half interest in the Real Property in 2010 because, at that time, John and Nannette jointly owned it.  (Stipulation & Order ¶ 4; *see* D.E. No. 22, March 19, 2017 Letter from Nannette to the Hon. Joseph A. Dickson, U.S.M.J., at 4).  And the law is clear: the federal tax liens that attached to John's one-half interest in the Real Property continued to encumber that interest despite any subsequent transfers.  *See Bess*, 357 U.S. at 57; *Michigan v. United States*, 317 U.S. 338, 340 (1943).  Finally, the Court Order that directed the sale of the Real Property provided that the "Federal Tax Liens and Laufer Judgment Lien shall attach to the net proceeds with the same order and priority as they attached to the Real Property."  (D.E. No. 13).

### 4. Lien Priority

#### a. The Laufer Judgment is entitled to priority.

The Court agrees with the United States and John that the Laufer Judgment is entitled to priority.  (*See* D.E. No. 42-1 at 6-7; D.E. No. 48 at 3-5).  Section 6323 of the Internal Revenue Code dictates what type of—and under what circumstances—liens are entitled to priority over federal tax liens.  26 U.S.C. § 6323.  Under § 6323(a), a federal tax lien is invalid "as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor" until a NFTL has been filed.  *See also United States v. City of New Britain*, 347 U.S. 81, 84 (1954) (adopting first-in-time, first-in-right rule).

- 8 -

The Laufer Judgment was perfected when it was recorded with the Superior Court of New Jersey on February 17, 2011. Over six months later, on September 9, 2011, the IRS filed NFTLs for the 2005 and 2008 tax periods. About five months after that, the IRS filed a NFTL for the 2009 tax period. Thus, as the United States concedes, the Laufer Judgment takes priority over the federal tax liens. (*See* D.E. No. 42-1 at 7) (stating that "the United States is entitled to collect whatever remains after Laufer's judgment is satisfied from [John's] one-half interest in the sale proceeds").

### b. Nannette's claim for monthly mortgage payments is not entitled to priority.

The Court also agrees with the United States and John that Nannette's claim[4] for monthly mortgage payments is not entitled to priority. (*See* D.E. No. 42-1 at 7-10; D.E. No. 48 at 3-5). According to Nannette, because the 2007 Judgment of Divorce "required [John] to make the mortgage payments, his interest in the property is subject to his responsibility to pay the mortgage." (D.E. No. 46 at 3). Nannette therefore contends that John's "one-half interest in the [Real Property] must be reduced by the amount of the unpaid mortgage." (*Id.*). Nannette's argument fails, however, because she failed to reduce the monthly payment obligation to judgment, which makes her interest unenforceable under state law and inchoate under federal law.

To enjoy priority over a federal tax lien under § 6323(a), a state judgment lien must have (1) been properly perfected under state law; and (2) become choate under federal law. *See United States v. Fid. Phila. Tr. Co.*, 459 F.2d 771, 773-74 (3d Cir. 1972). As to perfection under state law, New Jersey Statute § 2A:16-11 provides that

---

[4] In her opposition, Nannette argues that "the United States misstates [her] legal position. She does not claim the unpaid mortgage amounts are owed to her; the payments are owed to the lender." (D.E. No. 46 at 2). But as the United States points out, this statement "incorrectly formulates the issue" because it "implies that the lender's secured interest in the Real Property was solely against [John's] one-half interest in the Real Property." (D.E. No. 51 at 2). The United States then cites the title report prepared in advance of the closing, which indicates that the mortgage lien was secured by both John and Nannette's interest in the Real Property. (*Id.*) (citing D.E. No. 42-13, Ex. H-1 at 19-20; D.E. No. 42-14, Ex. H-2 at 1-7). Moreover, the lender has already been paid from the sale proceeds, so Nannette is, in effect, seeking reimbursement for her share of that payment. (*See* D.E. No. 46-4 ("Closing Statement")).

> [a] judgment or order for the payment of money is one which has been reduced to a fixed dollar amount. Any judgment for periodic payments where a total amount has not been fixed shall not be considered as having been reduced to a fixed dollar amount unless a judgment fixing arrearages has been entered.

In addition, judgments must be recorded by the Clerk of the Superior Court to affect real property throughout the state. *Brescher v. Gern, Dunetz, Davison & Weinstein, P.C.*, 585 A.2d 961, 964 (N.J. Super. Ct. App. Div. 1991). Here, the monthly payment obligation in the 2007 Judgment of Divorce is not perfected because Nannette did not reduce it to a fixed dollar amount or a judgment fixing arrearages. She also never recorded it with the Clerk of the Superior Court.

Nannette acknowledges that she did not reduce the monthly payment obligation to a fixed dollar amount. (D.E. No. 46 at 3). Instead, she calls the United States' argument "specious" and offers two justifications for her inaction. (*See id.*). First, she says that "at the time [] Laufer and [the IRS] record their liens, [John] was current on his mortgage payments. He did not stop paying the mortgage until sometime in 2014." (*Id.*). Second, she says that she "was not a party to the Laufer [J]udgment or the NFTL against [John] and therefore, she received no notice in which she could take any protective action." (*Id.*). Nannette provides no authority for these propositions, and the Court sees no reason to deviate from the well-settled law noted above.

Under federal law, a state judgment lien is choate only "when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *New Britain*, 347 U.S. at 84; *see also* 26 C.F.R. § 301.6323(h)-1 (defining a "judgment lien creditor" as "a person who has obtained a valid judgment . . . for the recovery of specifically designated property or for a certain sum of money"). In addition, to have a choate lien, the creditor must also have the right to summarily enforce the lien. *See Monica Fuel, Inc. v. IRS*, 56 F.3d 508, 513 (3d Cir. 1995) ("We agree that a right to enforce a lien summarily (that is, without a judicial proceeding) is a

requirement of choateness in addition to the tripartite rule of fixed identity, property and amount, articulated in *New Britain*.").

The 2007 Judgment of Divorce required John to make future mortgage payments of unspecified amounts as of the date it was entered. (*See* D.E. No. 42-11, Ex. F at 6-7) ("The parties agree that [John] shall continue to pay the mortgage, taxes and carrying costs of the marital home until such time as it is sold."). This obligation does not identify a sum certain under federal law. *See Illinois v. Campbell*, 329 U.S. 362, 375 (1946) (stating that a lien must be definite at the critical time to be choate, "not merely ascertainable in the future by taking further steps"); *Richards v. Richards*, 368 F. Supp. 2d 817, 820 (W.D. Mich. 2005) (holding that a judgment of divorce awarding the plaintiff $21,000 on a later date was inchoate because it "was not due and payable as of the time of the filing of the lien"). Furthermore, as the United States persuasively argues, the monthly payment obligation in the 2007 Judgment of Divorce was not immediately enforceable against John's interest in the Real Property. *See* N.J. Stat. § 2A:16-11; *see also Lawyer's Foreclose Specialists, Inc. v. Schwarz*, No. 04-0422, 2005 WL 3021928, at *3 (E.D. Mo. Sept. 26, 2005) (finding a divorce judgment inchoate because the amount due was never reduced to judgment).

Accordingly, the Court finds that the 2007 Judgment of Divorce did not create a secured interest in favor of Nannette in John's one-half interest in the Real Property. The Court therefore grants summary judgment on the United States' Cross Claim II and will enforce the federal tax liens against John's interest in the net sale proceeds from the sale of the Real Property.

### B.    Nannette's Motion to Withdraw Funds

Nannette seeks to withdraw $235,000 from the funds currently on deposit with the Clerk of Court.  (D.E. No. 54).  John and the United States oppose Nannette's motion.  (D.E. Nos. 57 & 58).  For the following reasons, the Court denies Nannette's motion.

Nannette asserts that Defendants have claimed only 50% of the total sale proceeds, leaving her with an undisputed 50% share.  (*See* D.E. No. 54).  But as John and the United States point out (*see generally* D.E. Nos. 57 & 58), Nannette's argument ignores John's counterclaims that he is entitled to a portion of Nannette's 50% interest in the sale proceeds (*see* D.E. No. 8).  Furthermore, the United States is correct that if John "is entitled to collect some percentage of [Nannette's] share, then more than 50% of the sales proceeds will be required to satisfy the claims of all of the Defendants."  (D.E. No. 58 at 4).  The Court agrees that, in this context, the United States would be prejudiced if it were forced "to recover less than if it had simply foreclosed on its liens against the Real Property."  (*Id.* at 5).  Accordingly, Nannette's motion to withdraw funds is denied.

### C.    John's Cross-Motion for Default Judgment & Nannette's Motion to Vacate Default and to File an Answer

As set forth above, John has obtained Nannette's default and now seeks default judgment on his counterclaims.  (*See* D.E. No. 58).  To date, Nannette has not responded to John's counterclaims.  She now moves, however, to vacate default and seeks leave to file an answer to the counterclaims.  (D.E. No. 59).  For the following reasons, the Court denies John's motion for default judgment and grants Nannette's motion to vacate default and to file an answer.

Nannette's counsel, Mr. Levin, submitted a declaration in support of Nannette's motion explaining that his failure to respond to John's counterclaims was accidental.  (*See* D.E. No. 59).  Mr. Levin states that he has "limited experience in the Federal Court" and that at the time, he was "not familiar with the ECF/PACER system in which documents are posted."  (*Id.* ¶ 9).  Mr. Levin

represents that he "simply did not see the seven paragraph counterclaim," and that the "failure to file an answer to the counterclaim was an oversight" and "not done willfully or in bad faith." (*Id.* ¶¶ 9-10).

"The district court has the discretion to enter default judgment, although entry of default judgments is disfavored as decisions on the merits are preferred." *Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.*, 596 F. Supp. 2d 842, 847 (D.N.J. 2008) (citations omitted); *see also Hritz v. Woma Corp.*, 732 F.2d 1178, 1180-81 (3d Cir. 1984) ("[W]e have repeatedly stated our preference that cases be disposed of on the merits whenever practicable."). Thus, "district courts must resolve all doubt in favor of proceeding on the merits." *Animal Sci. Prods., Inc.*, 596 F. Supp. 2d at 847 (citing *Zawadski de Bueno v. Bueno Castro*, 822 F.2d 416, 420 (3d Cir 1987)).

Here, Nannette's counsel has explained that his failure to respond to John's counterclaims was an oversight. (*See generally* D.E. No. 59). And John does not appear to offer any reasons why he would be prejudiced if he does not obtain a default judgment. (*See* D.E. Nos. 59 & 61). Accordingly, in light of the parties' representations and the Third Circuit's preference for deciding cases on the merits, the Court will deny John's motion for default judgment, vacate Nannette's default, and permit Nannette to file an answer to John's counterclaims.

## III.     Conclusion

For the foregoing reasons, the Court GRANTS the United States' motion for summary judgment; DENIES Nannette's cross-motion for summary judgment; DENIES Nannette's motion to withdraw funds; DENIES John's cross-motion for default judgment; and GRANTS Nannette's motion to vacate default and for leave to file an answer to John's counterclaims.  An appropriate Order accompanies this Memorandum.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
